# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

L.P., *ex rel.* Shayne and Michelle Jones

*Plaintiff,*

WAYNE HALFWAY HOUSE, INC. d/b/a HOLLIS
ACADEMY ; JASON CREWS, in his individual
capacity; KATIE MCBRIDE in her individual
capacity; JACQUISTA CHRISTMAN, in her
individual capacity, CARL MOORE in his
individual capacity.

*Defendant.*

Case No.

JURY DEMANDED

---

## COMPLAINT

Comes now the Plaintiff, L.P., ex rel Shayne and Michelle Jones by undersigned counsel and for his complaint against the Defendants states the following:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.

2.      Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs

to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

3. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b) because Defendants are located in this District and the events and omissions that gave rise to the Complaint occurred in this District.

## Parties

4. Plaintiff L.P. is a minor child, the son of Michelle and Shayne Jones, and a resident of Rutherford County, Tennessee.

5. Defendant Jason Crews is the Executive Director of Wayne Halfway House, Inc. and has held this position at all times during the actions described in this suit in Maury County Tennessee. He is believed to be a resident of Cookeville, Tennessee. He is sued in his individual capacity.

6. Defendant Wayne Halfway House, Inc. owns and operates Hollis Academy and Residential Treatment Center and is located in Maury County Tennessee. Hollis Academy and Residential Treatment Center is a Residential Childcare Agency licensed by Tennessee Department of Children's Services, located in Maury County Tennessee, and owned and operated by Wayne Halfway House, Inc..

7. Defendant Katie McBride is a Family Support Worker for the Tennessee Department of Children's Services. She is believed to be a resident of Tennessee. She is sued in her individual capacity.

8. Defendant Carl Moore is an employee of the Tennessee Department of Children's Services. He is believed to be a resident of Cumberland County, Tennessee. He is sued in his individual capacity.

9.     Defendant Jacquista Christman is an employee of the Tennessee Department of Children's Services. She is believed to be a resident of Coffee County, Tennessee. She is sued in her individual capacity.

## Factual Allegations

10.     Wayne Halfway House is licensed by Tennessee Department of Children's Services as a Residential Childcare Agency.

11.     Wayne Halfway House at Hollis Academy is an 84-bed facility that includes a Level III Special Population, level III Group Care Continuum and treatment center for young men between the ages of 12-18 taken into DCS custody with behavioral, social and mental health issues.

12.     Level III Group Care and Special Population children may be placed based upon in Group Care facilities based upon the following:

    a) Felony charges

    b) History with aggressive behavior

    c) Intense gang affiliation

    d) Sexual offenses

13.     On or around October 6, 2023, L.P. was placed in DCS custody at a Level II facility after he ran away from home.

14.     On or around March 6, 2023, L.P. was disrupted from the Level II DCS residential facility for running away and placed with Hollis Academy-Waynes Halfway House.

15.     Upon information and belief, Defendants McBride, Christman, and Moore

placed L.P. in Hollis Academy, a subsidiary of Wayne Halfway House.

16.     Hollis Academy-Waynes Halfway House is known to receive children who have gang affiliations and exhibit violent behavior.

17.     Specifically, children who are affiliated with the gangs GD or the Gangster Disciples, and BD, or the Black Disciples, are housed within Hollis Academy.

18.     Children within Hollis Academy draw on their pants with markers gang symbols and initials to indicate which gang they are affiliated with.

19.     It was known by staff that children placed within Hollis Academy were affiliated with gangs.

20.     It was known by staff at Hollis Academy that gangs within Hollis Academy would routinely beat other children.

21.     Hollis Academy has had previous violent incidents involving children affiliated with gangs, including a riot.

22.     L.P. had no gang affiliations upon entering Hollis Academy, and never claimed to be a gang member.

23.     Upon being placed at Hollis Academy, L.P. was put in a room with four other boys, three of which were affiliated with the GD gang.

24.     At approximately 8:30 a.m. on March 10, 2024, L.P. was lying in bed when his roommate, "M" who was a member of GD gang.

25.     Two other kids, "G" and "D" entered the room and stood by L.P.'s bed. G and D were also members of the GD gang.

26.     Suddenly, all three boys attacked L.P, kicking his head, face, shoulders,

pounding his entire body, kicking his head into the cement walls.

27.     A staff member of Wayne Halfway House observed the attack from the doorway for a significant amount of time without intervening.

28.     When the staff member entered the room, the attackers stopped beating L.P. He then simply instructed L.P. to follow him.

29.     Visibly bloodied and afraid, L.P. stood up and followed the staff member into the nurse's office.

30.     L.P. waited for approximately 2 hours before the nurse arrived at the office.

31.     When the nurse arrived, L.P. told the nurse about the assault and stated he was in immense pain.

32.      L.P. had a bloody nose, and his jaw was contorted and disfigured.  He was obviously seriously injured.

33.     The nurse for Wayne Halfway House gave L.P. an ice pack and told him he was fine.

34.     At no point did the nurse ask L.P. the identity of the three boys who assaulted him.

35.     The nurse left L.P. and had another staff member sit with L.P. in another office.

36.     L.P. stated he was in immense pain and that he thought his jaw was broken, but the staff member told L.P. his lip was swollen and that he would be fine.

37.     Another staff member arrived and saw L.P. bloodied with a busted nose and contorted jaw and informed the nurse and asked L.P. what happened. L.P. informed

this staff member of the assault, and the staff member instructed other staff that L.P. needed to be transported to a hospital for care.

38.     Staff at Wayne Halfway House did not transport L.P. to a hospital or seek medical attention until 2:00 p.m.

39.     A staff member of Wayne Halfway House eventually transported L.P. to Vanderbilt's Children's Hospital.

40.     At Vanderbilt's Children's Hospital, L.P. received a full body scan.

41.     Vanderbilt's medical team determined that L.P. had sustained a broken jaw as well as several hematomas on his face, head, and legs.

42.     Doctors at Vanderbilt decided to sedate L.P. due to the immense amount of pain and wired his jaw shut.

43.     L.P. required surgery to repair his broken jaw.

44.     During his time at Vanderbilt, L.P. cried uncontrollably asking to go home with his parents, afraid to stay overnight at Wayne Halfway House.

45.     Parents for L.P. called Defendant Katie McBride asking if they could take L.P. home during his recovery, explaining the immense fear L.P. had. Defendant McBride told the parents they would be arrested and charged with kidnapping if they did not allow L.P. to return to Wayne Halfway House.

46.     Parents for L.P. had a phone conversation with the director, Jason Crews, of Hollis Academy and Wayne Halfway House, who informed them that L.P. would sleep on a couch in the staff area and be closely monitored by staff. He ensured the parents that L.P.'s belongings had already been moved to a single occupancy room where L.P.

would be placed the next day. Defendant Crews further stated that a guard would be stationed outside of L.P.'s room at all times to ensure no kids were allowed into L.P.'s room for his safety.

47.     L.P. expressed grave concern that he would not be safe and that minors were allowed to come and go through the staff area and the single occupancy rooms. Staff ensured L.P. that he would be guarded and kept safe.

48.     Staff member Johnny Chumley asked L.P. multiple times if L.P. was a gang member. He stated that the boys who attacked him were gang members and asked L.P. if he was a member of a rival gang. L.P. repeatedly told Mr. Chumley that he was not a gang member and never claimed to be affiliated with a gang.

49.     Mr. Chumley informed Michelle Jones that L.P. was not safe at Hollis Academy- Wayne Halfway House, that the teens were gang affiliated and were violent, and that she should do everything she can to get L.P. out of Hollis Academy.

50.     In separate conversations, Mr. Chumley reassured Shayne and Michele Jones that L.P. would have his own room and that a guard would be sitting outside the door the entire time to prevent kids from entering the room.

51.     On March 11, 2024, at 2:00 a.m. L.P. was discharged from Vanderbilt Children's Hospital and was transported by Johnny Chumley and another staff member back to Wayne Halfway House.

52.     Staff members of Hollis Academy- Wayne Halfway House had L.P. sleep on a couch in the staff area where children had free access and without a guard the evening of March 11, 2024.

53. While L.P. was on the couch in the staff area, all three boys who assaulted him came into the room.

54. One of the teens, "G", who previously assaulted L.P. came up to L.P., appearing to hug him and told L.P. that he better not get "G" in trouble, making threats to L.P. in front of staff members.

55. Two female staff members observed the teens approach L.P. and failed to intervene.

56. Although Defendant Jason Crews knew about the risk of harm to L.P., he failed to ensure direct supervision of L.P. or take any action to ensure staff members adequately supervised L.P. on the evening of March 11, 2024.

57. Defendant Jason Crews failed to ensure the three teens who assaulted L.P. were separated from L.P. when L.P. was returned to Hollis Academy.

58. The morning of March 12, 2024, L.P. was transported to a single-occupancy room, where no staff member was put on guard outside of the room and minors were allowed to come and go as they pleased.

59. No staff checked in on L.P. to ensure he was safe or to ensure that the three boys who assaulted him were restricted from being near him.

60. On March 12, 2024, L.P. was transported back to Vanderbilt Children's Hospital for jaw surgery.

61. L.P. received two metal plates at the front of his jaw, as well as permanent medical braces to stabilize the fracture at the upper part of his jaw and had his mouth wired shut.

62.     During Jason Crews' time as Executive Director for Hollis Academy and Wayne Halfway House, including the time L.P. was in their care and custody, he was actively and intimately involved in the day-to-day operations and involved himself in the care of kids.

63.     Executive Director Jason Crews possesses final decision-making authority over the policies, procedures of the Wayne Halfway House pertaining to the care and safety of minor children.

64.     Executive Director Jason Crews knew that children placed in Wayne Halfway House by Tennessee Department of Children's Services presented a severe risk of harm to other kids.

65.     Executive Director Jason Crews failed to establish any written policy or procedure to ensure the safety and wellbeing of children while in the care and custody of Wayne Halfway House.

66.     Executive Director Jason Crews failed to establish any written policy or procedure to prevent physical altercations among children within Wayne Halfway House.

67.     Executive Director Jason Crews knew that non-violent children within his care were exposed to a high risk of harm by the violent children.

68.     Executive Director Jason Crews maintained a custom whereby staff routinely ignored the serious safety needs of children including L.P. in ways including but not limited to:

   a)  Failing to implement any policy or procedure to prevent violence by

gang affiliated children against children like LP, despite the obvious risk of such violence.

b) Maintaining a custom whereby staff disregard the medical needs of children.

c) Maintaining a custom whereby staff disregard the safety of children.

d) Failure to train staff to ensure that children's medical needs are immediately cared to.

e) Failure to train staff to ensure the protection and safety of children when threatened or assaulted by other children.

f) Failing to train staff regarding the risk of assault posed by other children, despite the routine frequency with which kids were assaulted by others within the care of Wayne Halfway House.

g) Failure to supervise staff to ensure they followed orders concerning the safety and wellbeing of children.

h) Failure to supervise staff to ensure they tend to immediate medical needs of children.

i) Acquiescing and approving the conduct of staff who fail to implement safety orders concerning children by:

   i. Failing to supervise children under immediate safety threats;

   ii. Failing to discipline children within their care and custody who assault and seriously injure other children within their care.

69. Defendant Jason Crews knew or had reason to know that L.P. was in

immediate danger by virtue of his mere placement with Wayne Halfway House and risk of further injury.

70.     Wayne Halfway House is licensed by the Tennessee Department of Children's Services to receive and house children committed to the custody of the State of Tennessee.

71.     Because Wayne Halfway House performs a state function, Wayne Halfway House is subject to the same constitutional obligations as Tennessee DCS.

72.     Wayne Halfway House fails to provide training to its staff regarding the essential knowledge, tools, preparation, and authority to respond to the immediate medical needs of children, as well as safety risks to children.

73.     Wayne Halfway House does not maintain any ongoing training program for staff regarding children's safety.

74.     Wayne Halfway House provides no training concerning monitoring or implantation of safety accommodations to children within its care.

75.     Wayne Halfway House maintains a custom, whereby no supervision or monitoring is conducted to ensure children assaulted by other children, remain separated from their attackers and safe.

76.     Wayne Halfway House fails to provide training about the constitutional obligations of licensed residential childcare agencies to staff.

77.     None of the defendants or any other staff ensured the safety of L.P.

78.     Children at Hollis Academy-Wayne Halfway House are routinely subjected to violence by other children who are housed there.

79.    Children at Hollis Academy-Wayne Halfway House routinely suffered violent attacks from gang affiliated juveniles and complained about their safety to staff.

80.    Defendants McBride, Christman and Moore knew or should have known that Hollis Academy-Waynes Halfway House routinely housed violent and gang affiliated children.

81.    As a result of the attack and Defendant's acts and omissions, L.P. has suffered serve physical and emotional injuries.

### COUNT I: VIOLATION OF THE RIGHT TO DUE PROCESS
### FOURTEENTH AMENDMENT – STATE CREATED DANGER
### 42 U.S.C § 1983
### (All Defendants)

82.    Plaintiff repeats and realleges paragraphs 1 through 82 as if stated here verbatim.

83.    Defendants McBride, Christman and Moore removed L.P. from his home, and by placed L.P, in a Level III DCS facility.

84.    Defendants McBride, Christman and Moore knew or should have known that Hollis Academy housed violent, gang affiliated teens.

85.    Defendants McBride, Christman and Moore exhibited deliberate indifference to L.P.'s safety by placing him in a Level III facility.

86.    L.P.'s risk to harm was created and/or increased when placed in Hollis Academy, a subsidiary of Wayne Halfway House.

87.    Defendants Crews, Wayne Halfway House and Hollis Academy placed L.P. in a room with three known gang members.

88.    Defendants exhibited deliberate indifference to L.P. Pott's safety and

medical needs by:

    a)  Failing to separate gang affiliated children from non-gang affiliated children.

    b)  Failing to implement any policy or procedure to assure the safety of children after an altercation with other children.

    c)  Maintaining a custom whereby staff disregard the medical needs of children.

    d)  Maintaining a custom whereby staff disregard the safety of children.

    e)  Failure to train staff to ensure that children's medical needs are immediately cared to.

    f)  Failure to train staff to ensure the protection and safety of children when threatened or assaulted by other children.

    g)  Failing to train staff regarding the risk of assault posed by other children, despite the routine frequency with which kids were assaulted by others within the care of Wayne Halfway House.

    h)  Failure to supervise staff to ensure they followed orders concerning the safety and wellbeing of children

    i)  Failure to supervise staff to ensure they tend to immediate medical needs of children.

    j)  Acquiescing and approving the conduct of staff who fail to implement safety orders concerning children by:

        i.  Failing to supervise children under immediate safety threats;

ii. Failing to discipline children within their care and custody who assault and seriously injure other children within their care.

89. Defendant Jason Crews is a policymaker that is aware of, condoned, and facilitate by his inaction, the conscious disregard for children's safety including bunk supervision of children and medical needs of children.

90. L.P.'s risk to harm was created and/or increased when placed in a room with known gang members at Hollis Academy, a subsidiary of Wayne Halfway House.

## COUNT II: VIOLATION OF THE RIGHT TO DUE PROCESS
## FOURTEENTH AMENDMENT – DELIBERATE INDIFFERENCE
## 42 U.S.C § 1983
## (All Defendants)

91. Plaintiff repeats and realleges paragraphs 1 through 91 as if stated here verbatim.

92. A special relationship existed between Defendants McBride, Christman, Moore and L.P. when Defendants removed L.P. from his home and placed him into state custody.

93. Specifically, Defendants McBride, Christman and Moore moved L.P. from a Level II facility to a Level III facility.

94. As a result of removing L.P. from his home, Defendants limited L.P.'s freedom to act on his own behalf.

95. Defendants were aware that many of the children placed within Hollis Academy- Wayne Halfway House were violent and had gang affiliations.

96. Defendants were aware of L.P.'s vulnerability by being placed in a setting with violent children with gang affiliations.

97.    Defendants knew or should have known that violent, gang affiliated children posed a threat of harm to L.P. and other non-violent children placed within Wayne Halfway House- Hollis Academy.

98.    Defendants disregarded the risk of placing L.P. within a Level III DCS facility with known violent and gang affiliated children.

99.    Defendants McBride and Christman exhibited deliberate indifference to L.P.'s safety by:

a)  Failing to adopt or implement adequate measures to screen children, like L.P., to determine their safety in group homes;

b)  Placing non-violent and non-gang affiliated children are placed in group homes with violent and gang affiliated children, despite other reasonable and safer alternatives;

c)  Failing to consider safety risks to children when placed within group homes;

d)  Placing children like L.P. in DCS facilities that were not appropriate based on the child's needs and risks;

e)  Failing to place children like L.P. in the appropriate level DCS facility or group home.

f)  Failing to seek alternative placements for children rather than placing children in a DCS facility that did not meet their needs and exposed them to an unreasonable risk of harm.

100.    Defendant Crews, Waynes Halfway House and Hollis Academy exhibited

deliberate indifference to L.P.'s safety by:

    a) Failing to implement any policy or procedure to assure the safety of children after an altercation with other children.

    b) Failing to adopt or implement adequate policies or procedures to segregated violent and/or gang affiliated children from non-violent non-gang affiliated children.

    c) Failing to adopt or implement adequate policies or procedures to screen children for gang affiliations.

    d) Maintaining a custom whereby staff disregard the medical needs of children.

    e) Maintaining a custom whereby staff disregard the safety of children.

    f) Failure to train staff to ensure that children's medical needs are immediately cared to.

    g) Failure to train staff to ensure the protection and safety of children when threatened or assaulted by other children.

    h) Failing to train staff regarding the risk of assault posed by other children, despite the routine frequency with which kids were assaulted by others within the care of Wayne Halfway House.

    i) Failure to supervise staff to ensure they followed orders concerning the safety and wellbeing of children.

    j) Failure to supervise staff to ensure they tend to immediate medical needs of children.

k) Acquiescing and approving the conduct of staff who fail to implement safety orders concerning children by:

    i. Failing to supervise children under immediate safety threats;

    ii. Failing to discipline children within their care and custody who assault and seriously injure other children within their care.

101. Defendant Jason Crews is a policymaker that is aware of, condoned, and facilitate by his inaction, the conscious disregard for children's safety including bunk supervision of children and medical needs of children.

102. Defendants deliberately failed to take adequate measures to extinguish the threat violent gang affiliated children posed to L.P.

103. As a direct and proximate result of Defendants deliberate indifference, L.P. was attacked by violent children within Wayne Halfway House- Hollis Academy

## COUNT III: NEGLIGENCE *PER SE*
### Tennessee Common Law
### (Wayne Halfway House, and Jason Crews)

104. Defendants knew or had reason to know that Hollis Academy- Wayne Halfway House routinely houses violent and gang affiliated children.

105. Defendants knew or had reason to know that non-violent children, including L.P., were at risk for serious harm and physical injury by being housed with violent and gang affiliated children.

106. Defendants owed a duty to L.P. to ensure that violent and gang affiliated children were separated from non-violent and non-gang affiliated children.

107. Defendant Jason Crews, Wayne Halfway House and Hollis Academy failed

to meet the standard of care and violated its duty of care to L.P. through neglect. The negligence of Defendants includes, but is not limited to the following acts and omissions:

a) Failing to implement any policy or procedure to assure the safety of children after an altercation with other children.

b) Failing to adopt or implement adequate policies or procedures to segregated violent and/or gang affiliated children from non-violent non-gang affiliated children.

c) Failing to adopt or implement adequate policies or procedures to screen children for gang affiliations.

d) Maintaining a custom whereby staff disregard the medical needs of children.

e) Maintaining a custom whereby staff disregard the safety of children.

f) Failure to train staff to ensure that children's medical needs are immediately cared to.

g) Failure to train staff to ensure the protection and safety of children when threatened or assaulted by other children.

h) Failing to train staff regarding the risk of assault posed by other children, despite the routine frequency with which kids were assaulted by others within the care of Wayne Halfway House.

i) Failure to supervise staff to ensure they followed orders concerning the safety and wellbeing of children

j) Failure to supervise staff to ensure they tend to immediate medical

needs of children.

k) Acquiescing and approving the conduct of staff who fail to implement safety orders concerning children by:

    i.  Failing to supervise children under immediate safety threats;

    ii.  Failing to discipline children within their care and custody who assault and seriously injure other children within their care.

108.    A reasonably prudent licensed home would not have failed to provide the care listed in the above complaint.

109.    Each of the foregoing acts of negligence on the part of Defendants Jason Crews, Wayne Halfway House and Hollis Academy was a proximate cause of L. P's injuries. L.Ps injures were all foreseeable to Defendants Jason Crews, Wayne Halfway House, and Hollis Academy.

110.    As a direct and proximate result of such negligent, grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, L.P. suffered injuries including pain and suffering, permanent physical and mental injuries, emotional distress, loss of enjoyment of life and pecuniary damages.

## DAMAGES

111.    As a direct and proximate result of the Defendants' violations of his federally protected rights and their reckless disregard to a serious medical need, Plaintiff has suffered:

a)  Pain and suffering

b)  Physical and mental injuries

    c) Pecuniary damages including past and future medical expenses

    d) Loss of enjoyment of life

    e) Serious mental suffering and emotional distress

112.    Based on their intentional and reckless misconduct, L.P. requests an award of punitive damages against Defendants Jason Crews.

## REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff L.P. requests:

I.    Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II.    A jury be empaneled to try this case;

III.    That a Declaratory Judgment be entered;

IV.    That Plaintiff L.P. be awarded nominal damages;

V.    That Plaintiff L.P. be awarded compensatory damages in an amount determined by a jury.

VI.    That Plaintiff L.P. be awarded punitive damages against Defendant Jason Crews in an amount deemed appropriate by a jury;

VII.    That Plaintiff L.P. be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII.    For pre- and post-judgment interest on all damages awarded;

IX.    For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Sarah Mansfield*
Wesley Ben Clark, #32611
Frank Ross Brazil, #34586
Paul D Randolph #39667
Sarah Mansfield #39476
BRAZIL CLARK, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
paul@brazilclark.com
sarah@brazilclark.com